James N. Esterkin, Portland, Or., for creditor-appellant.

William B. Owens, Bend, Or., for appellees.

Before PREGERSON, TROTT and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

The Lomas & Nettleton Company ("Lomas") appeals from the decision of the district court, which reversed an order of the bankruptcy court and directed confirmation of the plan of Estel Ray Hougland and Ruth Evelyn Hougland ("Debtors") under Chapter 13 of the Bankruptcy Code.

The district court determined that the claim of a lender on residential real estate could be bifurcated into a secured and unsecured portion, and that the lender's rights under the unsecured portion could be modified. *In re Hougland*, 93 B.R. 718 (D.Or.1988). We affirm.

## In re Estel Ray HOUGLAND, Ruth Evelyn Hougland, Debtors.

## Estel Ray HOUGLAND; Ruth Evelyn Hougland, Appellees,

v.

## The LOMAS & NETTLETON COMPANY, Creditor–Appellant.

### No. 89–35009.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1989.

Decided Oct. 4, 1989.

## BACKGROUND FACTS

On January 20, 1983, the Debtors obtained a loan from Lomas. They executed a note and deed of trust. The deed of trust is a first lien on real property which constitutes the principal residence of the debtors. There is no other security for that loan.

The State of Oregon has a program to help veterans of the United States Armed Forces finance the purchase of their homes. That program permits negative amortization, so that the principal balance will actually increase for some time, and then begin to decrease as time goes on. The Debtors' loan was under that program.

The Debtors fell behind on their payments and filed a Chapter 13 Petition in the United States Bankruptcy Court for the District of Oregon. At that time, the value of the property was $47,240.00, but the total balance on the loan was $51,090.78,

including principal, interest and other charges.

The Debtors seek to modify the rights of the lender in the portion of the balance that exceeds the value of the real property, and we must decide whether they may do that.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction. 28 U.S.C. § 158(d).

The issue before this court is one of statutory construction. We review that issue de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc) *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

Resolution of the issue before the court involves the interplay between two sections of the Bankruptcy Code, 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2).[1]

As the Supreme Court succinctly put it in *United States v. Ron Pair Enter.*, — U.S. ——, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989): "Subsection (a) of § 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." [Footnote reference omitted.]

Section 1322 deals with debtors' plans in Chapter 13 proceedings. The portion of that section pertinent to this matter provides as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may ...

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.... [Emphasis added.]

We must determine the effect, if any, of the underscored language on the treatment of the portion of the debt that section 506(a) classifies as unsecured.

Some courts have found that nothing in section 1322 affects the determination under section 506(a) that an undersecured claim can be divided into a secured portion and an unsecured portion. They have then permitted the debtor's plan to modify the unsecured portion. *See, e.g., In re Harris*, 94 B.R. 832 (D.N.J.1989); *In re Frost*, 96 B.R. 804 (Bankr.S.D.Ohio 1989); *In re Kehm*, 90 B.R. 117 (Bankr.E.D.Pa.1988); *In re Caster*, 77 B.R. 8 (Bankr.E.D.Pa. 1987); and *In re Bruce*, 40 B.R. 884 (Bankr.W.D.Va.1984). Others have found that Section 1322(b)(2) is ambiguous, and have gone on to hold that the clause "other than a claim secured only by a security interest in real property that is the debtor's principal residence," (hereafter the "other than" clause) precludes modification of a lender's rights and prevents the separate treatment of what would otherwise be an unsecured claim. *See, e.g., In re Russell*, 93 B.R. 703 (D.N.D.1988); *In re Brown*, 91 B.R. 19 (Bankr.E.D.Va.1988); *In re Catlin*, 81 B.R. 522 (Bankr.D.Minn.1987); *In re Hemsing*, 75 B.R. 689 (Bankr.D.Mont. 1987); and *In re Hynson*, 66 B.R. 246 (Bankr.D.N.J.1986).

We agree with the former line of case authority. When normal principles of statutory construction are applied[2], the analysis of this statutory scheme is relatively simple. There are times when the quest for meaning should begin and end "with the language of the statute itself." *United States v. Ron Pair Enter.*, 109 S.Ct. at 1030. This is one of those times.

It should first be noted that it is clear that section 506(a) applies to Chapter 13 proceedings. *See* § 103(a). There is, therefore, no reason to believe that the phrases "secured claim" and "unsecured claim" in section 1322(b)(2) have any meaning other than those given to them by section 506(a). It follows that Lomas'

---

1. All section references hereafter are to sections of 11 U.S.C.

2. For standards of construction *see, e.g., Wilshire Westwood Assoc. v. Atlantic Richfield Corp.*, 881 F.2d 801 (9th Cir.1989); and *In re Seidel*, 752 F.2d 1382, 1384 (9th Cir.1985).

claim had a "secured claim" and an "unsecured claim" component.

That being said, we can look at the "other than" clause. That clause follows the secured claim portion of the sentence and precedes the unsecured claim portion. Certainly it refers to what preceded it, and indicates that a secured residential real estate claim will have special protection. Indeed, if the referent of the "other than" clause is not the secured claim language which precedes it, what could the referent be? It would be most unusual if it were the unsecured claim language or the whole sentence. That strongly indicates that only the "secured claim" portion is protected. We disagree with the courts which have reasoned that section 1322(b)(2) is violated if the unsecured portion of the claim is affected by the plan, because that would "modify the rights" of a lender who only held a residential real estate mortgage. *See In re Russell*, 93 B.R. at 705–06. To reach that conclusion would require that we beg the question, for it postulates that the "other than" clause does refer to the unsecured portion of the claim. If it did, the results of those cases would follow, but there is nothing in the statute to suggest that conclusion.

It has been suggested that Congress should have sent the word "claim" into the "other than" clause flanked on each side by the word "secured." *In re Hynson*, 66 B.R. at 253. Surely not. Congress need not create such an awkward and wooden sentence structure. We also find the suggestion of amicus that the word "such" should have preceded the word "claim" to be equally unfelicitous, and little more than a bow to legal jargon. As it is, the sentence has a natural rhythm and flow that does not disturb its clarity. That is true, whatever one might think of the drafter's use of commas around the "other than" clause. A word about those commas. There may be cases when a close examination of the much-abused comma is helpful. See the majority and dissenting opinions in *United States v. Ron Pair Enter.*, 109 S.Ct. at pp. 1030–31 and 1035, respectively. It is not particularly helpful in this case.

Here, commas or no commas the sense of the sentence remains the same.

It has also been suggested that sections 506(a) and 1322(b)(2) are in conflict. *In re Hemsing*, 75 B.R. at 691. As our discussion shows, they are not. They are in harmony when read in the context of the whole statute. That is the way they must be read. *See Davis v. Michigan Dept. of Treasury*, — U.S. —, 109 S.Ct. 1500, 1504, 103 L.Ed.2d 891 (1989).

It is true that if our construction led to an absurdity, we would be bound to eschew it and look for other guidance. *See Green v. Bock Laundry Mach. Co.*, — U.S. —, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989). No such absurdity appears here. The truly secured portion of the residential real estate lender's claim does have special protection. Only the unsecured portion does not. That does not conflict with any of the purposes of the statute, nor does it conflict with the intent of Congress. We are comforted in this decision by the fact that a leading treatise on bankruptcy law agrees with this construction of the statute. 5 *Collier on Bankruptcy*, para. 1322.06[a] (15th Ed.1979). As already noted, other courts are also in agreement.

Some have asserted that the construction we adopt here will severely undermine the statute. *See, e.g., In re Russell*, 93 B.R. at 706, and *In re Hynson*, 66 B.R. at 252. We find no basis for that assertion. In fact, one would think that most residential real estate lenders would see to it that they had a sufficient cushion to avoid finding themselves in an undersecured position. This case presents an exception to that reasoning because the loan was made as part of a social program, and was not driven by pure economics. Another exception may be found when persons who are not true residential real estate lenders secure their loans by taking a security interest in a debtor's home so that they can take advantage of the Chapter 13 provisions. See the discussion in *In re Shaffer*, 84 B.R. 63 (Bankr.W.D.Va.1988). We need not and do not decide whether section 1322(b)(2) covers those lenders at all, but we do note that our reading of the statute would certainly

put a crimp in their schemes. Exceptions may test a rule, but these do not require a change in our interpretation of the statute.

Perhaps it would not be amiss to note that those who have set out to harvest the legislative history have only been able to reap the conclusion that Congress intended to benefit residential real estate lenders. *See, e.g., In re Harris*, 94 B.R. at 835–36. We agree, but that is also made obvious by the "other than" clause itself. Any attempt to glean more than that from the legislative history has been unsuccessful. In any event, since in this respect the statute is internally consistent and can be construed without the use of outside aids, there is no real need to concentrate on the legislative history.

Finally, our decision here is not in conflict with *In re Seidel*, 752 F.2d 1382 (9th Cir.1985). In *Seidel*, the court was not dealing with an undersecured mortgage, and simply had no occasion to reflect upon or address the issue decided here. It did not do so.

### CONCLUSION

Congress quite plainly has provided for the separation of undersecured claims into two components—a secured component and an unsecured component. It has then provided for their treatment in Chapter 13 proceedings. The secured portion has special protection when residential real estate lending is involved. The unsecured portion does not.

AFFIRMED.