In re Clarence MARSHALL, III, and Teresa Marshall, p/k/a Teresa Gonzalez, Debtors.

Bankruptcy No. 89–11000–013.

United States Bankruptcy Court, D. Montana.

March 2, 1990.

Martha C. Carlson, Towe, Ball, Enright & Mackey, Billings, Mont., for debtors.

Polk, Scheer & Prober, A Law Corp., Tarzana, Cal., Joel E. Guthals, Wright, Tolliver & Guthals, P.C., Billings, Mont., for NFMC.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

After due notice, hearing was held January 16, 1990, on confirmation of the Debtors' Fourth Modified Chapter 13 Plan, together with the objections of National First Mortgage Corporation (NFMC), and the Chapter 13 Trustee. Also heard were the Debtors' Objection to the Proof of Claim of NFMC, Motion to Value Collateral of NFMC, Motion to Avoid NFMC's Lien, and Motion for Disallowance of Unsecured Portion of NFMC's Claim. Prior to hearing a Stipulation was filed between the Debtors and NFMC which settled the valuation issue, valuing the Debtors' residence at $56,-500.00.

The Debtors, in their Fourth Modified Chapter 13 Plan and through their Motions, are proposing to pay NFMC only on the portion of their debt that is secured. NFMC has filed a Proof of Claim as a secured creditor in the amount of $77,009.12. NFMC contends that it is entitled to a secured claim of $56,500.00, and an unsecured claim of $20,509.12. The Debtors contend that NFMC is not entitled to an unsecured claim. The Debtors contend that NFMC's claim can be bifurcated under the holding of *In re Hougland*, 886 F.2d 1182, 1185 (9th Cir.1989). In *Hougland*, the Court held that § 506(a) and § 1322(b) are not in conflict and that a claim secured in property by "real property that is the Debtor's principal residence" may be bifurcated into a secured and an unsecured claim.[1] NFMC objects and resists the Debtors' Motions and Plan, but NFMC does not dispute that its claim may be bifurcated under *Hougland*. Accordingly, based on the agreement as to the value filed between the parties, NFMC has a secured claim of $56,500.00 and an unsecured claim of $20,509.12. *In re Glenn*, 796 F.2d 1144, 1147 (9th Cir.1986); *Hougland*, supra, at 1185.

The Debtors contend that the *Hougland* decision stands for the proposition that bifurcation of an undersecured creditor's claim with an unaltered contract payment on the secured claim results in a total "strip-down" of the creditor's unsecured portion in a state (such as Montana) with an anti-deficiency statute upon sale under Deed of Trust. *See, First Bank of Forsyth v. Chunkapura*, 226 Mont. 54, 734 P.2d 1203 (1987). This Court disagrees. In *Hougland*, the Ninth Circuit held that § 1322(b)(2) did not bar bifurcation of an undersecured claim into a secured and unsecured claim pursuant to § 506, and that while the secured portion cannot be modified, the unsecured portion may be modified along with other unsecured claims. *Id.; Accord*, 5 *Collier on Bank-*

*ruptcy*, § 1322.06, p. 1322–15 (15th Ed. 1989). *Hougland* further stands for the result that the note and Deed of Trust must be paid according to its terms for otherwise the secured portion would be modified, which is prohibited by § 1322(b)(2). The Ninth Circuit Court did not hold that the unsecured portion could be "stripped down" or alleviated by lien avoidance. Avoidance of the lien under § 506(d) to the unsecured portion of the claim means only that the unsecured portion of the claim is treated along with the other unsecured debts, but that the residence continues to be a lien as to the secured portion of the claim. *In re Brouse*, (*Brouse v. CSB Mortgage Corp.*), 110 B.R. 539, 543–44 (Bankr.Colo.1990); 11 U.S.C. § 506(d). Accordingly, the Debtors' Motion to Avoid NFMC's Lien is without merit under the *Hougland* and *Wilson* decisions, because NFMC's claim is simply bifurcated into a secured and unsecured claim.

Pursuant to § 1322(a)(3), a Chapter 13 Plan must "provide the same treatment for each claim within a class." Accordingly, NFMC is entitled to the same treatment on its unsecured claim as the Debtors' other unsecured creditors. As such, the Debtors' Motion for Disallowance of the Unsecured Portion of NFMC's Claim is denied under § 1322(a)(3) of the Code.

NFMC asserts that the Debtors' Fourth Modified Chapter 13 Plan is proposed in bad faith. No evidence in support of this assertion was presented to the Court. NFMC, therefore, relies on their contention that the Debtors' attempted treatment of its claim in the Plan shows bad faith. This Court disagrees. The Debtors' treatment of NFMC's claim in their Plan simply shows the Debtors' counsel's misinterpretation of the *Hougland* decision and the interplay of § 506 and § 1322 of the Code. The interpretation, albeit found to be incorrect, does not elevate the Plan to a bad faith filing. *See,*

---

1. In *In re Hemsing*, 75 B.R. 689, 4 Mont. B.R. 462 (Bankr.Mont.1987), this Court, relying on the decision of *In re Hynson*, 66 B.R. 246 (Bankr.N.J.1986), held that a claim secured by the Debtor's principal residence could not be modified or bifurcated. The *Hynson* decision has been recently reversed by the Third Circuit in *In re Wilson*, 895 F.2d 123 (3rd Cir.1990). *Hemsing* likewise has been reversed by *Hougland*.

*Matter of Prine,* 10 B.R. 87, 89 (Bankr.Idaho 1981); *In re Easley,* 72 B.R. 948 (Bankr. M.D.Tenn.1987); *In re Ashton,* 85 B.R. 766 (Bankr.S.D.Ohio 1988).

NFMC and the Trustee object to the confirmation of the Debtors' Fourth Modified Chapter 13 Plan on the grounds that it does not submit all of the Debtors' disposable income to the Plan payments. The Debtors' Chapter 13 Statement shows that the Debtors gross $3,329.62 per month, with a net of $1,380.62 per month. Of this amount, the Debtors propose Plan payments of $911.52 per month. The Trustee and NFMC assert that an additional amount, up to $469.10 per month, should be contributed to the proposed Plan payments. What constitutes "disposable income" to meet the confirmation requirements of § 1325(b)(1)(B) has been addressed repeatedly by numerous courts. However, most decisions examine the Debtors' proposed budget expense items to determine if "luxuries" are being kept by the Debtor. In this case, the Debtors, after deduction of their monthly expense items, have proposed to pay 67% of their disposable income to fund the Plan. Such a proposal does not meet the requirements of § 1325(b)(1)(B) of the Code. *See, In re Metz,* 820 F.2d 1495, 1498 (9th Cir.1987); *In re Stein,* 91 B.R. 796, 800–803 (Bankr.S.D. Ohio 1988); *In re Navarro,* 83 B.R. 348, 354 (Bankr.E.D.Pa.1988). The Debtors argue that the $469.10 cushion is necessitated by the fluctuation of the Debtors' income. However, based on the Debtors' Chapter 13 Statement, which the Debtors have submitted to support the feasibility of their Plan, the Debtors will have an average of $1,380.62 per month to fund the Plan. The Court, therefore, assumes that some months will fluctuate above this figure, with other months below this figure. Yet, based on the evidence before the Court, the $1,380.62 per month must be used to determine the Debtors' disposable income for confirmation under § 1325(b)(1)(B), unless the Debtors can make a firm showing that a cushion for unexpected necessities is reasonably probable. The Court cannot foresee the necessity of a "safety cushion" under the present record, and notes that $469.10 per month is patently more than a safety cushion. Based on the foregoing,

IT IS ORDERED:

1. That the Debtors' Fourth Modified Chapter 13 Plan, filed November 28, 1989, is denied confirmation;

2. That NFMC has a secured claim of $56,500.00 and an unsecured claim of $20,-509.12;

3. That the Debtors' Motions to Avoid Lien and for Disallowance of Unsecured Claim are denied; and

4. That the Debtors shall have ten (10) days to file an Amended Plan in compliance with this Order.