**In re Janis M. SAUBER, Debtor.**

**Bankruptcy No. 3–90–00383.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

June 7, 1990.

198

Kenneth Keate, St. Paul, Minn., for debtor.

J.J. Mickelson, Minneapolis, Minn., Chapter 13 Trustee.

Patrick Hennessy, Minneapolis, Minn., for United Mortg. Corp.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter is before the Court on objection by United Mortgage Corporation (UMC) to the Debtor's proposed Chapter 13 plan. The issues were heard on May 10, 1990, and appearances are as noted in the record. The matter was thereupon continued pending receipt of final briefs, which have now been submitted. The Court, having considered the evidence and arguments introduced and submitted, and now being fully advised in the matter, makes this Order pursuant to the federal and local Bankruptcy Rules.

## I.

UMC holds a first mortgage on the Debtor's homestead, which had a balance owing at filing in the amount of $61,108.41. Debtor was in default in the total amount of $7,075.44. Market value of the property was approximately $52,000, and UMC holds no other security for the debt.

Debtor proposes the following treatment of UMC under her plan:

(a) UMC's claim would be treated as an allowed secured claim in the amount of $45,000 (Debtor's valuation less 10% representing costs of sale), and an unsecured claim for the balance.

(b) The secured claim would be paid by maintenance of the regularly scheduled payments required by the mortgage in the monthly amounts of $480.05, plus required escrow. The payments would be applied first to interest at the annual contract rate of 10%, and then in reduction of principal until the entire $45,000 claim be paid in full.

(c) The prepetition arrearages are absorbed in the plan as unsecured debt which, along with other unsecured debt, would be paid through the plan at 10%, or less, of the allowed amount of the claim.

The plan is not confirmable because it would modify the rights of UMC beyond the limitations of 11 U.S.C. § 1322(b)(2) and (b)(5).

## II.

█ UMC argues that it is a holder whose rights cannot be modified by a plan except to the limited extent that a plan can provide a reasonable period of time for the Debtor to cure defaults under the mortgage, *citing* 11 U.S.C. § 1322(b)(2) and (b)(5).[1] The Debtor argues that her plan treatment of UMC is consistent with the limitations of § 1322(b)(2) and (b)(5), relying heavily on *Hougland v. Lomas & Nettleton Co. (In re Hougland)*, 886 F.2d 1182 (9th Cir.1989).

The Ninth Circuit Court of Appeals, in *Hougland*, observed that § 506(a) applies to Chapter 13 proceedings. It then determined that the terms "secured claim" and "unsecured claim" used in § 1322(b)(2) have the same meaning as they are given by § 506(a). From that, with the help of language and sentence structure analysis, the Court concluded that: "Congress quite plainly has provided the separation of undersecured claims into two components—a secured component and an unsecured component. It has then provided for their treatment in Chapter 13 proceedings. The secured portion has special protection when residential real estate lending is involved.

---

1. 11 U.S.C. 1322(b)(2) and (b)(5) provide in pertinent part:
 "(b) Subject to subsections (a) and (c) of this section, the plan may— ... (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, ... (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time ..."

The unsecured portion does not." *Id.* at 1185.

The Ninth Circuit, in *Hougland,* takes an overly technocratic approach in both analyzing the language of § 1322(b)(2) and (b)(5), and in relating § 506(a) to it. Although ostensibly undertaken in search of the plain meaning of these statutes, that meaning, and the proper setting of the statutes in the context of the overall scheme of the Code, is as clearly missed as the proverbial forest might be missed in examining the trees. As the *Hougland* court noted, we are not concerned with the significance of misplaced or omitted commas here, as was the Supreme Court in *United States v. Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

But what the *Hougland* court did not seem to appreciate, is that we are dealing with general and specific concepts that are intended to apply to, and govern, the rights of debtors and their creditors in different situations, and with different applications, depending upon particular Code purposes to be served. The application of general concepts is not universal in the scheme of the Code, but is subject to specific limitation, and even total disregard, in some instances. Thus, the general definition of "secured claim" in § 506(a), for instance, has no application to a creditor who has made an election under § 1111(b) in connection with a Chapter 11 case.

■ That Congress has provided certain home mortgagees with protection against the modification of their rights which might otherwise result through application of § 506(a) in Chapter 13 cases, is a simple and logical conclusion, readily drawn from reading § 1322(b)(2) and (b)(5). And, it is not surprising. The vast majority of Chapter 13 cases are filed by homeowners, and most plans treat mortgage defaults. Section 1322(b)(2) and (b)(5), in a relatively simple and straight-forward manner, protects the home loan industry from perceived adverse consequences that might otherwise result from general application of § 506(a) to it in Chapter 13 cases.

The protection afforded preserves the integrity of the mortgage contract, with the limited exception of allowing a debtor a reasonable period in which to cure defaults. Whether such protection is necessary or appropriate, is a political question. That it has been afforded this class of creditors in Chapter 13 cases, is a judicial conclusion compelled, in this Court's view, by a straight-forward, common-sense reading of § 1322(b)(2) and (b)(5), both standing alone and in the overall context of the Code. The clearly focused concern is with the rights of *holders* of residential real estate mortgages. By focusing on the terms "secured claim" and "unsecured claim", and by using § 506(a) definitions, *Hougland* judicially removes most of the protection that the statute provides. The technical nature of the underlying claims of holders of residential real estate mortgages is not important to the scheme of § 1322(b)(2) and (b)(5), as it relates to the rights of those holders.

The analysis of *Hougland,* is inconsistent with the analysis of *In re Catlin,* 81 B.R. 522 (Bankr.D.Minn.1987). Although the Eighth Circuit Court of Appeals has not addressed the issue, the tenor of that court's discussion of § 1322(b)(2) and (b)(5) in *Justice v. Valley Nat'l Bank,* 849 F.2d 1078 (8th Cir.1988) suggests that the Circuit Court would more likely accept the *Catlin* analysis. This Court rejects the analysis of *Hougland* and reaffirms its analysis in *Catlin.*

### III.

BASED ON THE FORGOING, IT IS HEREBY ORDERED:

Confirmation of the Debtor's plan dated February 26, 1990, and filed on February 27, 1990, is denied as failing to comply with the provisions of 11 U.S.C. § 1325(a)(1) in that it exceeds the permissible modification of United Mortgage Corporation's rights as provided in 11 U.S.C. § 1322(b)(2) and (b)(5).