**LOMAS MORTGAGE USA,**
Creditor–Appellant,

v.

**Michael V. ROBERTS and Elizabeth
V. Roberts, Debtor–Appellees.**

No. A90–0412 Civil.
Bankruptcy No. A90–00032.

United States District Court,
D. Alaska.

March 12, 1992.

Richard Ullstrom, Routh, Crabtree & Harbour, Anchorage, Alaska, for Lomas.

William D. Artus, Artus, Choquette & Williams, P.C., Anchorage, Alaska, for Michael and Elizabeth Roberts.

ORDER

SINGLETON, District Judge.

Lomas Mortgage USA ("Lomas") appeals from the Bankruptcy Court's confirmation of the Roberts' Chapter 13 Plan for the adjustment of their debts. Lomas makes four contentions. First, Lomas contends that the Bankruptcy Court erred by not including Lomas' mortgage insurance in the value of its secured claim. Second, Lomas contends that the Bankruptcy Court

erred by permitting the modification of Lomas' rights in its undersecured claim. Third, Lomas contends that the Plan wrongly fails to cure the Debtors' post-petition arrearage to Lomas. Fourth, Lomas contends that the Roberts' entire mortgage is rendered nondischargeable because the Roberts have employed Chapter 13's provision for long-term secured debt, 11 U.S.C. § 1322(b)(5).

Lomas' first and second contentions are without merit, for the reasons given in this Court's Order at Docket No. 28 in *Lomas Mortgage USA v. Fischer,* 136 B.R. 819 (D.Alaska 1992). That Order addresses the propriety of inclusion of mortgage insurance in the valuation of a secured claim, and the controlling nature of the decision of the Court of Appeals for the Ninth Circuit in *In re Hougland,* 886 F.2d 1182 (9th Cir.1989).

■ The asserted refusal of the Bankruptcy Court to require the Roberts to cure their post-petition defaults on the payments on the secured property is subject to review by this Court for an abuse of discretion.[1]

■ We disagree with Lomas' contention that the debtors' Plan does not require the debtors to cure the defaults. The Plan filed by the debtors provides at ¶ 4 that the

[a]rrearages to named lien holders shall be paid in installments by Trustee from funds available for distribution monthly, noncumulative, and, except for creditors specifically named in paragraph three above of this plan, shall be paid *in advance of periodic distribution to other creditors.* Payments shall be made in installments set forth below until amount

allowed each lien holder on a claim for arrearages filed herein has been paid. Debtors [sic] Plan, R.A. 19, at ¶ 4 (emphasis added). This method of curing the defaults, however, would devote the entire income of the Plan for many of the months of the Plan to the arrearages, which would effectively be given a priority, depriving the other unsecured creditors of some value.

■ The Order confirming the Plan provides that "[t]he debtor [sic] has no obligation to cure the arrearage on their pre-petition obligation to Secured Creditor."[2] This provision at first blush might be interpreted to refer to certain pre-petition arrearages, as Lomas argues. *See* Reply Brief of Appellant, Docket No. 8, at 11. Lomas argues that "[a]s their [sic] was no prepetition arrearage, the only arrearage that can be meant is the post-petition arrearage." *Id.*

An alternative explanation is that the phrase "pre-petition obligation" in the quoted sentence from the confirmation order might refer to the obligation as it once existed, an integral undersecured whole. However, after its partition into secured and unsecured portions, *cf. Hougland,* 886 F.2d at 1183–84, the integral undersecured "pre-petition obligation" would have been replaced by *two* post-petition obligations, a secured claim and an unsecured claim. The debtors' "arrearage on their pre-petition obligation to Secured Creditor," then, would have been implicitly disallowed by the confirmation order issued by the Bankruptcy Court. Those arrearages could then be subtracted from the unsecured remainder of Lomas' claim, thus avoiding the problem of the potentially unfair priority given to the arrearages which was alluded to above.[3]

---

1. The Code provides that the plan *"may"* have those features described in subsection (b) of Section 1322, which include the curing of defaults. 11 U.S.C. § 1322(b) (emphasis added). Such a plan shall be confirmed by the Bankruptcy Court if the plan satisfies the six requirements in Section 1325. The Order confirming the plan is reviewed by this Court for an abuse of discretion. *In re Pizza of Hawaii,* 761 F.2d 1374, 1382 (9th Cir.1985); *In re Pine Mountain LTD,* 80 B.R. 171, 172 (9th Cir. BAP 1987).

2. Order Confirming Chapter 13 Plan, R.A. 42, at ¶ 3(d). This Court notes that the adjective "pre-petition" modifies "obligation," not "arrearage."

3. Debtors suggest that the Bankruptcy Court may employ its powers under 11 U.S.C. § 105(a) to discharge the arrearages in this manner. *Cf.* Brief of Debtors–Appellees, Docket No. 7, at 33. The Court expresses no opinion on the question whether such exercise of power in fact took place, or whether it would have been appropriate in light of 11 U.S.C. § 1322(b)(2), (3), and (5) (providing for, *inter alia,* modification of

This Court cannot determine on the record before it which of these two interpretations is the correct interpretation of the Plan. When read with the confirmation order of the Bankruptcy Court, the Plan is ambiguous, as the debtors effectively concede. *See* Brief of Debtors–Appellees, Docket No. 7, at 30–31 (describing two inconsistent alternative interpretations of Plan). It is clear that a plan may provide for such curing of post-petition arrearages. *See* 11 U.S.C. §§ 1322(b)(3), (5). By implication, a plan permissibly may not.[4] This Court must remand to the Bankruptcy Court so that that Court may clarify the manner in which the Roberts' Plan addresses the post-petition arrearages.

▆▆▆ Lomas' fourth contention, that the Plan renders non-dischargeable the entire debt[5] owing to them, requires a careful analysis of *In re Hougland,* 886 F.2d 1182 (9th Cir.1989). In that case, the Ninth Circuit held that a creditor's claim which was undersecured by residential real estate could be divided into secured and unsecured portions. *Hougland,* 886 F.2d at 1183–84. The division then permitted the creditor's rights in the unsecured claim to be modified. *Hougland,* 886 F.2d at 1184.

The *Hougland* court concluded by noting that its decision did not conflict with the case of *In re Seidel,* 752 F.2d 1382 (9th Cir.1985). *Hougland,* 886 F.2d at 1185. *In re Seidel* concerned the creditor's right to regular payments on a debt which had already matured. In that case, the debtor proposed to pay off a note, which had matured before the debtor's petition was filed, by making payments over five years, with a balloon payment at the end of the debtor's plan. *Seidel,* 752 F.2d at 1383. The debt, which was secured by an interest in the debtor's principal residence, had not been accelerated due to default, but had matured in due course. *Id.* This distinguished it from cases in other circuits holding that the restoration of the status quo ante after a default-induced acceleration was not a modification of the creditor's rights. *See Seidel,* 752 F.2d at 1383 (distinguishing *In re Clark,* 738 F.2d 869 (7th Cir.1984); *Grubbs v. Houston First Amer. Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984) (en banc); *In re Taddeo,* 685 F.2d 24 (2d Cir. 1982)).

The *Seidel* court held that the delay of payments on a matured debt secured by a debtor's primary residence amounted to a prohibited modification of the creditor's rights, in violation of Section 1322(b)(2) of the Code. *Cf.* 11 U.S.C. § 1322(b)(2). But the *Seidel* court was not confronted with an undersecured mortgage, *Hougland,* 886 F.2d at 1185, and thus *Seidel* cannot be deemed to control Lomas' rights to non-

---

rights of claimholders, curing or waiving of any default, and the curing or waiving of defaults on long-term debt). *Cf. also In re Session,* 128 B.R. 147, 151 (Bankr.E.D.Tex.1991) (arrearages on long-term debt may not be summarily disallowed, nor allocated to the unsecured portion of the claim).

**4.** Of course, failure to provide for a curing of the default may have certain implications for the ability of Lomas to foreclose on the property at the conclusion of the Plan.

**5.** Lomas relies on Sections 1322(b) and 1328(a)(1) of the Code. Section 1322(b) provides, in relevant part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

. . . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due. . . .

11 U.S.C. § 1322(b).

Section 1328(a)(1) provides, in relevant part: (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title;

11 U.S.C. § 1328(a)(1).

dischargeability of the unsecured portion of its claim in the instant case.

This Court believes that *Hougland* provides for special protection for only the secured portion of a residential lender's claim. The *Hougland* decision implicitly contemplates lesser protection for the unsecured portion of the claim. The unprotected unsecured claim should be placed on an equal footing with all other unsecured claims, since the only nexus with the payment schedule referred to in Section 1322(b)(5) is destroyed when the court determines that the claim is unsecured. Any contrary conclusion would undermine the reasoning of *Hougland,* by frustrating the availability to the debtor of a discharge. If the discharge on the unsecured portion is denied to a debtor, then foreclosure will likely be available after completion of the plan, frustrating the initial purpose of bifurcation of the claim in the first place. This Court believes that the bifurcation of the claim on the one hand, as *Hougland* required, and the refusal to discharge the unsecured portion of the claim on the other hand, as Lomas argues for here, would be inconsistent. For better or worse, *Hougland* appears to require the bifurcation of the claim into a secured portion and an unsecured portion. Payments must continue to be made on the secured portion, and the secured portion may very well be long-term debt under Section 1322(b)(5), and thus non-dischargeable under Section 1328(a)(1). However, the unsecured portion must be on an equal footing with other unsecured claims, and is equally vulnerable to discharge pursuant to Section 1328(a).

The Court believes that a creditor's rights in an unsecured portion of a claim, once rendered vulnerable to modification under a Section 506 bifurcation, may not rise, like a phoenix, from the ashes of Section 1328(a)(1). The unsecured claim, after its separation from the secured claim, becomes a short-term unsecured debt subject to discharge with other unsecured debts upon completion of the Plan. The fact that

its Siamese twin is a secured debt which may indeed be a non-dischargeable long-term debt is immaterial. Whether this is an "absurdity" [6] resulting from an ill-reasoned decision, or instead a compelling example of the Code's "tenderness ... for bankrupt debtors," [7] is for the Court of Appeals to determine.

IT IS THEREFORE ORDERED:

That this matter be remanded to the Bankruptcy Court for further proceedings consistent with this Order.

---

6. *Hougland,* 886 F.2d at 1184.

7. *In re Schaitz,* 913 F.2d 452, 454 (7th Cir.1990) (Posner, J.) (a debt which is nondischargeable in Chapter 7 may be dischargeable in Chapter 13).