**In re David K. VINES, Bonnie L. Vines, Debtors.**

**David K. VINES, Bonnie L. Vines, Plaintiffs,**

**v.**

**MID–STATE HOMES, Ford Consumer Finance & Associates Finance, Defendants.**

**Bankruptcy No. 92–00287–AP–RRS–7.**

United States Bankruptcy Court, M.D. Alabama.

March 25, 1993.

Charles G. Reynolds, Sr., Alexander City, AL, for plaintiffs.

Christopher Kern, Mobile, AL, E. Terry Brown, Montgomery, AL, for defendants.

Curtis C. Reding, trustee.

## AMENDED OPINION ON COMPLAINT TO DETERMINE THE VALIDITY, PRIORITY OR EXTENT OF A LIEN

RODNEY R. STEELE, Chief Judge.

In this case, the court is called upon to decide whether in a Chapter 13 case the debtors may "strip down" two of three mortgages on the debtors' residential real property. The debtors filed an application to have the court determine this issue after filing a plan which provided for payment of a portion of these mortgages as required by 11 U.S.C. §§ 1325(a)(5) and 1322(b)(2) and (5).

### FACTS

The facts as finally evolved in these proceedings shows that the debtors' residence at the date of bankruptcy had a value of $70,000. The first mortgage holder, Mid–State Homes, has a balance under its security of $66,862.80. The second mortgage held by Ford Consumer Credit has a balance of $22,912, and the third mortgage made to Associates Finance has a balance of $5,000.

The debtors' application seeks to have the court determine the first mortgage is fully secured, but that under § 506 of Title 11, U.S.C., the second mortgage is undersecured or not secured at all, and that the third mortgage is totally unsecured.

At Opelika on January 6, 1993, the court heard the argument of counsel for Mid–State and for the debtors/plaintiffs, and concluded that Mid–State Homes was fully secured, that the claim of Ford Consumer Finance, the second mortgage holder, was altogether unsecured, and that the claim of Associates was unsecured.

Thereafter, Ford Consumer Finance filed a motion for reconsideration, asserting that it had not had an ample opportunity to be heard on the question of value, and further asserting that the court was without jurisdiction to "strip down" Ford Consumer's mortgage to the value of the remaining collateral's worth.

The court thereafter set the matter for hearing and heard argument of counsel, and has since that time upon motion of the plaintiff, dismissed the Mid–State Homes, since the plaintiffs assert that Mid–State Homes is fully secured.

### CONCLUSION

Ford Consumer Finance makes several arguments, but we think it is necessary to

treat only one such argument to dispose of the motion for reconsideration and to dispose of the application to determine the validity, priority and extent of liens on this residential real property.

We agree with Ford Consumer Finance and Associates that § 1322(b)(2) of Title 11 U.S.C. prevents the bifurcation of Ford's claim. That section provides that "the plan may (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ...."

Section 1322(b)(3) also provides for the curing or waiving of any default. And subsection (b)(5) provides that the plan may provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...."

■ Section 506(a) of Title 11, U.S.Code permits a debtor to bifurcate or strip down a secured claim to the value of collateral thereby making an undersecured creditor's claim into a secured claim and an unsecured claim. And while the debtor in a Chapter 7 may not thereafter avoid a lien of a secured creditor as to the unsecured portion [*see Dewsnup v. Timm*, — U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)], it does not affect the right of a Chapter 13 debtor to bifurcate the claim of a creditor who holds security into a secured and unsecured claim.

■ But we are satisfied that the provisions of 11 U.S.C. § 1322(b) prevent the bifurcation where there is a residential real estate mortgage or mortgages which the debtor seeks to treat in his plan by curing defaults pre-petition and proposes to continue making payments under the terms of the mortgage. Several Court of Appeals cases have held to the contrary, and have permitted Chapter 13 debtors to bifurcate a residential real estate mortgage claim and to compose the unsecured portion and to pay the secured portion in exact accordance with its terms.

But we adopt the holding in *In re Nobleman, Nobleman v. The American Savings Bank, et al*, (5th Cir.1992) 968 F.2d 483. In that case, the court held that such bifurcation was not permitted and that Chapter 13 debtors were required to treat the claimant under a home mortgage strictly in accordance with the terms of that mortgage, with the exception that they could cure pre-petition arrearages.[1]

Since all three of these mortgages are held by entities which have a claim against these debtors secured only by a security interest in real property, that is, the debtors' principal residence, each of them must be treated in accordance with 11 U.S.C. § 1322(b)(2), and they are all required to be paid strictly in accordance with the contracts.

■ Ford Consumer raises another question in connection with this case which merits some comment. Ford asserts that the valuation of its claim after confirmation is a denial of due process. Debtors who file Chapter 13 cases, and creditors who hold secured claims against such creditors are reminded of the holding in *In re Calvert*, (11th Cir.1990) 907 F.2d 1069, in which the court requires that a determination of the valuation of collateral under § 506(a) must be determined after a hearing on notice to the holder of a secured claim and any other person as the court may direct. *See* Bankruptcy Rule 3012. If **debtor** wishes to conclude the question of valuation at the time of confirmation, then he must raise that matter by a separate application to be heard before confirmation. Creditors who wish to protect their rights as secured creditors to collateral must appear and insist at the § 341 meeting or at a hearing on valuation requested by them

---

1. The Supreme Court granted certiorari in the case of *In re Nobleman*, and now has the holding in that case for consideration.

before confirmation to have determined the value of collateral.

■ If the matter of valuation of collateral is left open and not taken up under a specific, separate application and notice before confirmation, then the question of valuation remains open and is not concluded by the entry of the order of confirmation and may be taken up at any time.

An appropriate order will enter in this case.