CARDAMONE, Circuit Judge:
Aware of the difficulties faced by debtors in seeking to avoid liquidation, leading to the loss of debtors’ homes, Congress in the Bankruptcy Code provided that residential mortgages secured by liens could be broken down into two parts. . One part, equal to the market value of the real property, was fully secured; the other part, representing the amount owed the lender in excess of the market value, was to be treated as an unsecured lien. This remedy, *178 which by force of Congress’ action crams down the lender's interest, does not provide a solution acceptable to residential mortgage lenders, as the appeal before us demonstrates, though it aims to help debtors hold on to their homes. Our task is to sort through the competing concerns of borrowers and lenders in light of the Code provisions.
BACKGROUND
On May 24, 1987 Jimmie and Cynthia Bellamy (plaintiffs or debtors) purchased real property to serve as their principal residence in Bridgeport, Connecticut. They financed the purchase by giving a $133,000 promissory note, secured by a first mortgage, to Comfed Mortgage Co., Inc. The note called for monthly mortgage payments of $1,329.79 for a period of 20 years. Defendant-appellant Federal Home Loan Mortgage Corporation (Federal Home) subsequently purchased the mortgage and presently holds a security interest in the Bellamys' real property. See 12 U.S.C. § 1454(a).
When plaintiffs fell $13,000 in arrears, they filed on April 18, 1990 for reorganization under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 et seq. (1988) (Code). A week later they commenced this adversary proceeding in the Bankruptcy Court for the District of Connecticut seeking, inter alia, to bifurcate Federal Home’s allowed claim. The Bellamys sought to have the amount due on the note listed as a secured claim only up to the present market value of their residence, and to have the balance owed in excess of that value listed as an unsecured claim. The property’s market value was stipulated to be $127,500. Federal Home filed a proof of claim stating that the total due on the note was $151,340.85. In effect, the Bellamys sought to relegate the mortgagee to the status of an unsecured creditor with respect to the undersecured portion of its allowed claim or $23,840.85, discharge that unsecured debt with other unsecured claims, see 11 U.S.C. § 1322(b)(1), void the mortgage lien to that extent, 11 U.S.C. § 506(d), and reinstate the mortgage in its [70] reduced — “stripped down” — amount. See 11 U.S.C. § 1322(b)(5).
On January 10, 1991 the United States Bankruptcy Court for the District of Connecticut (Shiff, B.J.) held for plaintiffs. 122 B.R. 856 (Bkrtcy.D.Conn.1991). And, in a judgment entered July 9, 1991 the District Court for the District of Connecticut (Eginton, J.) affirmed, 132 B.R. 810 (D.Conn.1991). Federal Home now appeals.
DISCUSSION
I The Relevant Code Provisions
To resolve the competing concerns presented on this appeal we must analyze the interplay of two provisions of the Code. Because the issue is one of statutory construction, we review the opinions of the trial courts de novo. See Truck Drivers Local 807 v. Carey Transp., Inc., 816 F.2d 82, 88 (2d Cir.1987). In seeking to “strip down” Federal Home’s secured claim to the present market value of its collateral, plaintiffs rely on Code § 506(a). This provision applies in Chapter 13 reorganizations, see Code § 103(a), and states, in relevant part
[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor’s interest in the estate’s interest in such property ... and is an unsecured claim to the extent that the value of such creditor’s interest ... is less than the amount of such allowed claim.
In other words, an allowed claim secured by a lien is “a secured claim” only up to the market value of the property on which the lien is fixed, and is an unsecured claim for the balance owed above that market value. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989); see also, e.g., Superior Paint Mfg. Co., Inc. v. Lopez-Soto (In re Lopez-Soto), 764 F.2d 23, 26 (1st Cir.1985).
Federal Home’s position is grounded on a different section of the Code, also applicable in Chapter 13 proceedings. It relies on *179 § 1322(b)(2), which provides that a Chapter 13 plan of reorganization may
modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor’s principal residence, or of holders of unsecured claims ... (emphasis supplied).
It asserts that this provision prohibits the modification of its right to full payment of the note. According to Federal Home, allowing plaintiffs to strip away the underse-cured portion of the mortgage on the debtors’ principal residence would be a modification of its “rights” prohibited by § 1322(b)(2) because, as a consequence, that debt will not be paid in full. See §§ 1322(b)(1), (6). The bankruptcy and district courts both rejected this argument. For the reasons stated below, so do we.
Our view, consistent with the other circuits that have addressed this issue, is that § 1322(b)(2) prohibits modification of a residential mortgage lender’s rights only insofar as the mortgagee holds a secured claim. But, whether — and the extent to which — the mortgagee holds a secured claim must first be determined according to § 506(a). See Eastland Mortgage Co. v. Hart (In re Hart), 923 F.2d 1410, 1413 (10th Cir.1991) (per curiam); Wilson v. Commonwealth Mortgage Corp., 895 F.2d 123, 127 (3rd Cir.1990); Hougland v. Lomas & Nettleton Co. (In re Hougland), 886 F.2d 1182, 1183 (9th Cir.1989). Contra, e.g., In re Sauber, 115 B.R. 197, 198-99 (Bkrtcy.D.Minn.1990); Matter of Kaczmarczyk, 107 B.R. 200, 202-03 (Bkrtcy. D.Neb.1989). The several arguments advanced by Federal Home against such a construction of § 1322(b)(2) will be addressed in turn.
II Appellant’s Arguments
A. Section 1322(b)(2) Generally
The first argument is based on the prohibition against modification language of § 1322(b)(2). Section 506(a), appellant contends, deals solely with whether a claim is secured or unsecured and does not purport to affect a creditor’s rights. Because these two Code provisions concern different aspects of a creditor’s status, appellant continues, § 506(a) need not be looked to before applying § 1322(b)(2), particularly in light of the fact that “rights” is a broader concept than “claims,” and a creditor’s rights under a contract are to be safeguarded regardless of how a claim is classified. Therefore, Federal Home concludes, bifurcation is a prohibited modification of its rights because it allows debtors to classify as unsecured a portion of a contractually secured claim owed a mortgagee, with the result that such creditor’s right to payment under the mortgage remains unsatisfied.
We are unprepared to adopt Federal Home’s reading of § 1322(b)(2). Acknowledging that this section prohibits modification of a residential mortgagee’s rights does not answer the ultimate question to be decided — what are those rights? It appears that Federal Home is insisting that because its “rights” may not be modified, the parties’ contract — requiring full payment of the note regardless of the value of the residence — may not be altered by treating as an unsecured claim the amount due over and above the actual value of the property. Obviously, once classified as unsecured, that portion of the debt will not be fully satisfied.
The real question is whether the “rights” to which § 1322(b)(2) refers include the mortgagee’s rights concerning its claim or its rights with respect to its secured claim. If the former, then § 1322(b)(2) must be read as prohibiting modification of a mortgagee’s right- to payment of the full amount of its allowed claim, i.e. the amount of its note. But construing this section of the Code in that light would be directly contrary to one of the Code’s cornerstones, aimed at making a fundamental change from the Bankruptcy Act, that treatment under the Code turns on whether a claim is secured or unsecured, not on whether a creditor is secured or unsecured. See, e.g., Barash v. Public Finance Corp., 658 F.2d 504, 507 (7th Cir.1981).
The Code’s distinction between secured and unsecured claims rather than secured and unsecured creditors
*180 becomes important in the handling of creditors with a lien on property that is worth less than the amount of their claim, that is, those creditors that are undersecured.... By addressing the problem in terms of claims, the [Code] makes clear that an [under]secured creditor is to be treated as having a secured claim to the extent of the value of the collateral, and an unsecured claim for the balance of his claim against the debtor.
H.R.Rep. No. 595, 95th Cong., 2d Sess. (180-181), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6141; see also Ron Pair Enterprises, Inc., 489 U.S. at 240, 109 S.Ct. at 1030; In re Lewis, 875 F.2d 53, 55 (3rd Cir.1989). Thus, the “rights” which may not be modified under § 1322(b)(2) must be defined in terms of the claim, not with reference to the status of the claimant.
Although Federal Home is correct in noting that § 506(a) does not itself affect a creditor’s right to payment, it does not follow that § 1322(b)(2) operates without reference to § 506(a). A creditor’s right to payment — what is due it — is generally determined according to state law, see Butner v. United States, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). But the manner in which the right to payment must be satisfied is fixed by the Code, which accords different treatment to claims depending on whether they are secured or unsecured. See, e.g., Code §§ 1129(b)(2)(A), 1225(a)(5)(B), 1325(a)(5)(B); cf. Code § 101(5)(A) (1992 Supp.) (“claim” is any “right to payment, whether ... secured, or unsecured”). Hence, bifurcating Federal Home’s claim into unsecured and secured portions does not, for purposes of § 1322(b)(2), modify its “rights,” but rather simply determines how, under the Code, its right to payment must be satisfied. See In re Hart, 923 F.2d at 1411 (bifurcation is a recognition of the legal status of creditor’s interest in debtor’s property, not modification of the mortgage); see also 3 Collier on Bankruptcy § 506.04[1] (15th Edition) (Collier) (§ 506(a) “provides a measure of the entitlements of the holders of secured claims”).
B. “Other Than” Clause of § 1322(b)(2)
The next challenge appellant raises is bottomed on the “other than” language of § 1322(b)(2). Given that the section proscribes the modification of rights of holders of certain secured claims — but not the rights of certain secured creditors — the flaw in this challenge becomes readily apparent. The “other than” clause in the section refers to and protects holders against modification of secured claims secured only by the debtor’s principal residence. As already noted, the language of the section states that a Chapter 13 plan may “modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor’s principal residence, or of holders of unsecured claims ...” (emphasis furnished). Federal Home contends that the entire “claim” — regardless of the extent to which it is secured — may not be modified, citing § 101(5)(A) which defines “claim” as any “right to payment, whether or not such right is ... secured, or unsecured ” (emphasis added). As it is “claim” that is referred to in the “other than” clause, this argument then proceeds, the rights of one who holds a non-modifiable claim secured only by real property that is the debtor’s principal residence include the right to payment of the entire claim, not just to its secured portion.
We leave aside that this proposition repeats in another guise appellant’s earlier assertion that § 1322(b)(2) classifies claimants, as opposed to claims, on the basis of their status as secured or unsecured creditors. Even so, appellant’s argument is problematic in another respect. The “other than” clause is most logically read to refer to those words that precede it: “secured claims.” See In re Hougland, 886 F.2d at 1184; Wilson, 895 F.2d at 127; see also Wilshire Westwood Assoc. v. Atlantic Richfield Corp., 881 F.2d 801, 804 (9th Cir.1989) (under the rule of the last antecedent, qualifying phrase applies to what immediately precedes it); United States v. Ven-Fuel, Inc., 758 F.2d 741, 751 (1st Cir.1985) (same). Reading it in that fashion means the compass of the “other than” *181 clause’s language must be limited to secured claims in general, and excepts from the debtor’s power to modify only a certain type of secured claim. Cf. In re Hougland, 886 F.2d at 1184 (“other than” clause does not refer to unsecured portion of claim, therefore “claim” in “other than” clause need not be modified by either “secured” or “such”). Thus, § 1322(b)(2) protects from modification the .rights of a holder of a certain type of secured claim — one for which the only security is real property that is the debtor’s principal residence.
Having resolved that, it then becomes apparent that whether, and the extent to which, one holds a secured claim must in the first instance be determined according to § 506(a). See In re Hart, 923 F.2d at 1413. Such a harmonious reading of the two Code provisions, both applicable in Chapter 13 proceedings, accommodates the principle that whenever possible statutory provisions should be construed so as to avoid a conflict. See Pittsburgh & Lake Erie R. Co. v. Railway Labor Executives’ Ass’n, 491 U.S. 490, 510, 109 S.Ct. 2584, 2596, 105 L.Ed.2d 415 (1989); see also United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (statutory construction is holistic endeavor; apparently ambiguous language may be clarified when viewed in context of statutory scheme as a whole). With no conflict between §§ 506(a) and 1322(b)(2), Federal Home’s insistence that § 1322(b)(2), as the more specific provision, must take precedence over § 506(a) draws a distinction that ends up being of no significance. See Aeron Marine Shipping Co. v. United States, 695 F.2d 567, 576 (D.C.Cir.1982).
C. Legislative History of § 1322(b)(2)
We have the benefit of three separate amicus briefs. They and appellant, in another contention that warrants discussion, place great emphasis on the legislative history of § 1322(b)(2), which they see as evincing Congress’ purpose of barring the stripping-down of Federal Home’s claim. The legislative history of § 1322(b) has been exhaustively canvassed. See generally, e.g., Wilson, 895 F.2d at 127-28; Federal Land Bank of Louisville v. Glenn (In re Glenn), 760 F.2d 1428, 1432-35 (6th Cir.), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); Grubbs v. Houston First American Savings Association, 730 F.2d 236, 239-46 (5th Cir.1984) (en banc). A brief summary will therefore suffice here.
Under Chapter XIII of the Bankruptcy Act of 1898 the rights of any creditor whose claim was secured by real property could not be affected by a wage earner’s plan of reorganization because the definition of “claim” expressly excluded “claims secured by estates in real property or chattels real.” See Bankruptcy Act of 1898, Pub.L. No. 61, 30 Stat. 544-66 (repealed 1978), § 606(1). As part of a policy favoring Chapter 13 reorganizations over Chapter 7 liquidations for individuals with regular income, see H.R.Rep. No. 595, 95th Cong., 2d Sess. (118), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6079, Congress sought in the Code to provide for uniform treatment of secured creditors. See S.Rep. No. 989, 95th Cong., 2d Sess. (13-26), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5799-5812; Grubbs, 730 F.2d at 239 and n. 3; 5 Collier § 1322.09[2]. And, in seeking to promote the “fresh start” objective of the bankruptcy law, the House version of § 1322(b)(2) was designed to allow debtors to provide for modification of the claims of mortgagees as well, stating that “[t]he plan may modify the rights of holders of secured claims or the holders of unsecured claims.” Apparently out of concern over the impact unlimited Chapter 13 modification rights might have on the mortgage lending industry, the Senate version of § 1322(b)(2) retained Chapter XIII’s exception for mortgagees, see Wilson, 895 F.2d at 128; In re Glenn, 760 F.2d at 1433, allowing the Chapter 13 plan to “modify the rights of holders of secured and unsecured claims, except claims wholly secured by real estate mortgages.” S.Rep. No. 989, 95th Cong., 2d Sess. (141), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5927.
*182 Quite obviously the final version of § 1322(b)(2) represented a compromise. See Statements of Congressman Edwards, Sept. 28, 1978, 124 Congressional Record H11089, reprinted in 1978 U.S.Code Cong. & Admin.News 6436, 6481; Statements of Senator DeConcini, Oct. 6, 1978, 124 Congressional Record S17406, reprinted in 1978 U.S.Code Cong. & Admin.News 6505, 6550. The legislative history therefore indicates only that § 1322(b)(2) was designed to provide greater protection to home mortgage lenders than other secured creditors in the Chapter 13 context. This is, of course, plain on the face of the statute itself. No further guidance may be gleaned from the legislative history on the question presented here: the extent to which such creditors are to be accorded greater protection, i.e., whether modification includes bifurcation. See Wilson, 895 F.2d at 128. Therefore, construing § 1322(b)(2) as limited in its protective scope to the value of the property securing the claim cannot be regarded as in conflict with the legislative history. See id.; In re Hougland, 886 F.2d at 1184; In re Hart, 923 F.2d at 1415. In other words, contrary to the implication of Federal Home’s and amicis’ contention, the legislative history does not demonstrate that bifurcation is a modification prohibited by § 1322(b)(2). Cf. Bankruptcy Laws Commission’s Report, H.R.Doc. 93-137, Pt. 2, 93rd Cong., 1st Sess. (205) (1973), reprinted in 2 Collier Appendix (explaining modification to include alteration of “size and timing of installment payments ... or ... other provisions of the secured creditors’ contract,” not bifurcation).
Moreover, our view of the subject section provides protection for residential mortgagees holding secured claims not afforded other holders of secured claims, because the secured portion of the residential mortgagee’s claim may not be modified, unlike other secured claims. See Wilson, 895 F.2d at 128. This accords with the only discernible congressional purpose — to give additional protection to home mortgage lenders. See In re Hart, 923 F.2d at 1415 (legislative history does not indicate demonstrably different congressional aim).
III Dewsnup’s Import
Our analysis thus far presupposes that “secured claim” in § 1322(b)(2) has the same meaning as “secured claim” in § 506(a). Appellant argues that the recently decided case of Dewsnup v. Timm (In re Dewsnup), — U.S. -, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), precludes such a presupposition. In that case a Chapter 7 debt- or sought to utilize § 506(d) to void the undersecured portion of a lien. This section provides that “[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void.” The debtor argued that “secured claim” in § 506(d) had the same meaning as it did in § 506(a) and, therefore, the un-dersecured portion of the lien was void. Id., 112 S.Ct. at 776-77. In rejecting this view, the Supreme Court held that § 506(d) could not be used by a Chapter 7 debtor to void the undersecured portion of a creditor’s lien. Id. at 778. Federal Home contends that if “secured claim” in § 506(d) does not have the same meaning as it does in § 506(a), then the term does not have the same meaning in § 1322(b)(2) as it does in § 506(a). This argument sounds logical, but it does not withstand analysis.
Dewsnup did not hold that “secured claim” in other provisions of the Code was never to be construed as it was in § 506(a). Its analysis was limited to § 506(d) and the facts before it. Id. and n. 3. Hence, whether “secured claim” has the same meaning as it does in § 506(a) must be determined with reference to the particular Code provision at issue. In light of the fact that certain Code provisions explicitly state that the term “secured claim” is not to be defined as in § 506(a), see Code § 1111(b)(2), it is reasonable to assume “secured claim” ordinarily has the meaning assigned to it in § 506(a), unless to read it in that fashion would be “contrary to basic bankruptcy principles.” 112 S.Ct. at 779. See, e.g., United States v. Goldbaum, 879 F.2d 811, 813 (10th Cir.1989) (as a general rule of statutory construction, if a statute specifies exceptions to its general application other exceptions not mentioned are *183 excluded); see also S.Rep. No. 989, 95th Cong., 2d Sess. (68), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5854 (throughout the bill, references to secured claims are only to the claim determined to be secured under § 506(a), and not to the full amount of the creditor’s claim).
The differing language óf § 506(d) and § 1322(b)(2) — with respect to how the phrase “secured claim” is used — suggests that the Dewsnup analysis does not govern construction of § 1322(b)(2). Section 506(d) provides
[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless— (1) such claim was disallowed only under section 502(b)(5) or 502(e) ... or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 ...
Dewsnup ruled that “[t]he voidness language sensibly applies only to the security aspect of the lien.” 112 S.Ct. at 778. Consequently, § 506(d) can be used by Chapter 7 debtors to void a lien only where the claim at issue is both disallowed and unsecured. The term “secured” indicates whether the claim is secured, not (as in § 506(a)) the extent to which the claim is secured. If “secured claim” in § ■ 1322(b)(2) is read to mean only whether the claim is secured, the drafter’s choice of phraseology is difficult to comprehend and would render it in conflict with the Code’s overall scheme. There are several reasons for this.
First, § 1322(b)(2), unlike § 506(d), refers to unsecured as well as secured claims. It seems that “unsecured claim” has the same meaning in § 1322(b)(2) as it does in § 506(a); and, by a parity of reasoning, that its counterpart — secured claims— should also be understood as they are defined in § 506(a). Second, and more importantly, while § 506(d), unlike § 506(a), is concerned with liens, § 1322(b)(2) — as does § 506(a) — addresses claims. Interpreting § 1322(b)(2) as focusing only on whether the claim is secured classifies creditors, not claims, as secured or unsecured, an approach, as earlier discussed, so different from the Code’s expressed treatment of claims, (designed specifically as a change from pre-Code practice, see, e.g., H.R.Rep. No. 595, 95th Cong., 2d Sess. (180), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6141; Ron Pair Enterprises, 489 U.S. at 240, 109 S.Ct. at 1030) as to make it impossible to believe that such a notable exception to the Code’s overall scheme would not be unambiguously expressed, either in its text or its legislative history. See Erlenbaugh v. United States, 409 U.S. 239, 243, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972) (“a legislative body generally uses a particular word with a consistent meaning in a given context”).
Further, this reasoning is in contrast to that motivating the Supreme Court in Dewsnup not to apply § 506(a)’s definition in § 506(d), which was § 506(d)’s failure to evince an unequivocal legislative purpose to alter pre-Code practice respecting the voiding of liens. Under the Bankruptcy Act liens on real property were unaffected by bankruptcy proceedings. Because “[w]hen Congress amends the bankruptcy laws, it does not write ‘on a clean slate,’ ” 112 S.Ct. at 779, there must be either unambiguous language used in the statute or an indication in the legislative history that a new enactment was designed to alter well-settled bankruptcy principles. Id.; see also, e.g., Pennsylvania Dep’t of Public Welfare v. Davenport, 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990) (superseded by Criminal Victims Protection Act, Pub.L. Nos. 101-647, 101-581, 101-508 (1990)). With respect to the question of whether a lien should survive Chapter 7, the Supreme Court found neither. 112 S.Ct. at 778-79. Hence, it rejected, in the absence of any clear legislative directive to do so, applying the definition of “secured claim” in § 506(a) to § 506(d), because to do so would “depart from the pre-Code rule that liens pass through bankruptcy unaffected.” Id. at 778.
Dewsnup’s analysis of § 506(d) is thus inapposite in interpreting § 1322(b)(2). Past bankruptcy practice precluded the debtor from affecting the claims of creditors holding real property as security. See Bankruptcy Act of 1898 § 606; see also 5 Collier § 1322.09[2]; supra, at 181. Yet, distinct from its treatment of liens, the *184 Code expressly contemplates that a Chapter 13 debtor’s plan of reorganization may today, contrary to pre-Code practice, deal with creditors whose claims are secured by real property. See Code §§ 101(5)(A), 1322(b)(2), (3), (5); see also S.Rep. No. 989, 95th Cong., 2d Sess. (22), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5808; H.R.Rep. No. 595, 95th Cong., 2d Sess. (124 n. 47), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6085; Johnson v. Home State Bank, — U.S. -, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). As a result, applying § 1322(b)(2) in light of § 506(a) does not alter well-settled bankruptcy principles. To the contrary, it furthers Congress’ scheme under Chapter 13 by allowing the adjustment of claims secured by real property.
Moreover, and as a further distinction, a Chapter 7 debtor’s personal liability generally is extinguished upon liquidation, while a Chapter 13 debtor does not obtain discharge from personal liability until payments under the plan of reorganization are completed. This suggests that, as distinct from the more limited concerns implicated when lien avoidance is sought in Chapter 7, see 112 S.Ct. at 778, allowing Chapter 13 debtors to strip down an undersecured residential mortgagee’s claim forwards the legislative purpose of furthering reorganizations for individuals with regular income to enable them to retain their homes. See Code §§ 524(a)(1), 1327(c), 1328(a)(1); H.R.Rep. No. 595, 95th Cong., 2d Sess. (118, 121), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6079, 6082; 5 Collier § 1322.09[1]; see also Code § 349(b); 5 Collier § 1328.01[l][c] (anomalous to render nondischargeable in Chapter 13 a general.unsecured claim which would be discharged in Chapter 7); Davenport, 495 U.S. at 563-64, 110 S.Ct. at 2133-34 (scope of Chapter 13 discharge determined in accordance with policies underlying encouragement of individual reorganizations).
IV Alternative Arguments of Appellant and Amici
A. Modification
Once it is understood that the “rights” which § 1322(b)(2) protects are limited to the secured claim (as per § 506(a)), Federal Home and amici’s alternative arguments can readily be resolved. Appellant relies on Di Pierro v. Taddeo (In re Taddeo), 685 F.2d 24 (2d Cir.1982) to support the proposition that bifurcation is a modification within the meaning of § 1322(b)(2). There we held that allowing a Chapter 13 debtor to cure a defaulted mortgage by paying pre-petition arrearages and resuming payments was not a prohibited § 1322(b)(5) modification, noting the difference between reducing payments, which modifies a claim, and curing a default by maintaining payments. Id. at 26-28; accord, Matter of Clark, 738 F.2d 869, 872 (7th Cir.1984). Appellant and amici insist that In re Taddeo precludes the reduction of the total payments required under the mortgage. But since we have already ruled that the relevant claim under § 1322(b)(2) is Federal Home’s secured claim, which is being paid according to the terms of the note, there is no prohibited modification.
Appellant’s related argument that if the Bellamys seek to reinstate the mortgage, then under § 1322(b)(5) the entire debt must be treated as secured, is specious. If a debtor seeks to cure a default and reinstate a long-term residential mortgage, two steps must be taken: 1) the arrearages must be paid within a reasonable time, and 2) the parties’ original contract must be reinstated. See, e.g., Landmark Financial Services v. Hall, 918 F.2d 1150, 1154 (4th Cir.1990). The crux of the matter is what is meant by stating that the parties’ contract is reinstated. Does this mean that the total due under the contract must be paid, or merely that the terms of payment {e.g., rate of interest, monthly installments, etc.) must be maintained until the secured claim is paid?
Leaving aside what the parties may choose to do by agreement, the terms of payment must, at a minimum, remain unchanged or the prohibition on modification is meaningless. Federal Home goes further, arguing that “reinstating” the parties’ agreement requires classifying the en *185 tire debt as secured, so that the debtor must pay off the note in full in order to retain his or her home. But this presupposes that § 1322(b)(2) prohibits modification of the entire claim which, as we have concluded, it does not. Reading §§ 1322(b)(2) and (b)(5) as precluding a debtor from reinstating a mortgage in its stripped down form confuses the distinction between modification and bifurcation and undermines the purpose of Chapter 13. Consequently, appellant’s suggestion that the Bellamys are not helped by bifurcation because they must thereafter pay off the entire secured claim (generally a long-term obligation) within the life of the Chapter 13 plan is misguided.
Secured creditors whose secured claims may be modified and who are subjected to such a cramdown must have their secured claim paid within five years. See Code § 1322(c), 1325(a)(5)(B). Federal Home’s secured claim is not being modified, and therefore need not be paid off within the life of the plan. See § 1322(b)(5); In re Hayes, 111 B.R. 924, 926 (Bkrtcy.D.Or. 1990). If appellant’s definition of modification (as encompassing bifurcation) was correct, a debtor wishing to retain his overen-cumbered home would face this quandary — pay off its actual value within five years (most likely an impossible proposition, thereby precluding confirmation, see § 1325(a)(6)), or pay more than market value.
The first option is not a realistic one. See also In re Franklin, 126 B.R. 702, 711 (Bkrtcy.N.D.Miss.1991). The second creates perverse incentives in favor of liquidation (contrary to the purpose of the Code), pursuant to which the debtor’s personal liability generally is discharged once the creditor’s in rem rights are exercised. Compare Code § 524(a)(1) with § 1328(a)(1); see Johnson, 111 S.Ct. at 2154; see also 5 Collier § 1322.09[1]. If the post-bankruptcy Chapter 13 debtor is unable to reinstate the secured claim, he may be less able to establish and maintain equity than the post-liquidation debtor. See Bankruptcy Laws Commission’s Report, H.R.Doc. 93-137, Pt. 2, 93rd Cong., 1st Sess. (206), reprinted in 2 Collier Appendix (describing precursor to § 1322(b)(5) as enabling debtor to, while “operating under the plan, ... preserve his equity in his home and ... keep current on long-term debt”).
Section 1322(b)(5) addresses, as does the Code in general, secured and unsecured claims. In light of the goals of Chapter 13, § 1322(b)(2) and (5) must be read as allowing a debtor to reinstate in its stripped down form a residential mortgage that comes due beyond the life of the plan. The debtor must cure arrearages within a reasonable time, see § 1322(b)(5), but need make scheduled mortgage payments only until the secured claim is fully paid. See In re Franklin, 126 B.R. at 712-13; In re Hayes, 111 B.R. at 927. Such treatment of a residential mortgage lender’s secured claim is neither a modification prohibited by § 1322(b)(2) nor does it implicate §§ 1325(a)(5)(B) or 1322(c).
B. Remaining Contentions
Appellants, joined by amici, further urge that our holding will lead to absurd results and, rather than promoting the goal of home ownership, make it more difficult. Neither proposition is persuasive. The first draws on § 1325(a)(5)(B)(ii) which requires a Chapter 13 plan to provide holders of secured claims with payments having “value, as of the effective date of the plan, ... not less than the allowed amount of such claim.” Hence, though a Chapter 13 plan may be approved over a secured creditor’s objections, a creditor subjected to such a cramdown under § 1325 is afforded protection through retention of its lien, see (a)(5)(B)(i), and, under (a)(5)(B)(ii), to payment equal to the full value of its secured claim.
Further, full payment under § 1325(a)(5)(B)(ii) includes interest on the amount presently owing; this “present value” element of § 1325 is necessary to compensate the creditor for its inability to use the money owed while payments under the plan are being made, thereby achieving full satisfaction of the secured debt. For that reason, § 1325 requires market rate interest in addition to payments on the allowed *186 secured claim itself. Appellant believes that because of § 1322(b)(2)’s prohibition on modification, a residential mortgagee cannot take advantage of this provision, see, e.g., Foster Mortgage Corp. v. Terry (In re Terry), 780 F.2d 894, 897 (11th Cir.1985), and thus will not receive the full value of the allowed amount of its secured claim. Therefore, the residential mortgagee is treated “worse” — appellant’s absurd-argument scenario goes — than the nonresidential mortgagee secured creditor who is entitled to present value interest payments. Because Federal Home’s secured claim may not be modified, it need not be assured receipt of the present value of its secured debt in order to realize full satisfaction of its secured claim. Its “assurance” in this regard is provided by virtue of the fact that the Chapter 13 plan may not modify what was bargained for in respect to its secured claim. See Hall, 918 F.2d at 1154; 5 Collier § 1322.09[4].
Appellant asserts that permitting bifurcation results in it receiving more economically disadvantageous treatment in Chapter 13 than if the debtors had liquidated pursuant to Chapter 7. Specifically, it contends that in a depressed market bifurcation of an undersecured claim gives debtors a “windfall” because though the debtors are required to pay off the value of the note only up to the (lesser) value of the property, they are able to enjoy the benefits of any subsequent appreciation should real estate prices later rebound. If instead the debtors had opted for Chapter 7 liquidation (or if Federal Home had foreclosed), the mortgagee would have been able to purchase the residence at judicial sale and retain it until real estate prices rose, thereby allowing it to recoup the full amount of the debt owed. This windfall, appellant asserts, is the type of unfair result Congress sought to prevent in § 1322(b)(2).
We cannot agree. Such result is “unfair” as to any mortgagee, see In re Dewsnup, 112 S.Ct. at 778, not just one holding residential property as security. The legislative history of Chapter 13 does not address this possibility. In addition, these speculative contingencies regarding fluctuating real estate prices are not sufficient to justify a result contrary to that required by the Code’s language. See United Savings Ass’n of Texas, 484 U.S. at 372, 108 S.Ct. at 631 (§ 506(a) does not include the creditor’s right to immediate possession of the collateral in determining extent of security); Ron Pair Enterprises, 489 U.S. at 240-41, 109 S.Ct. at 1030.
Moreover, Federal Home declares the interpretation we adopt today of § 1322(b)(2) cannot stand because it provides no benefits to Chapter 13 debtors and is inappropriate because it does not promote the “fresh start” objectives of the bankruptcy laws. Although it is true that § 1322(b)(2) prohibits modification of, e.g., the interest rate or monthly payment amount called for in the contract, it does not follow that no legitimate benefit accrues to the Chapter 13 debtor who bifurcates an undersecured residential mortgagee’s claim. To the contrary, discharging the unsecured portion of the debt allows the debtor to pay off the secured portion of the note at an earlier date and lessens the total debt burden. See In re Frost, 123 B.R. 254, 258 (Bkrtcy.S.D.Ohio 1990); cf. 5 Collier § 1328.01[1][c] (debts dischargeable in Chapter 13 but not in Chapter 7 evince legislative desire to avoid having debts hang over debtor’s head indefinitely). We believe this a measurable contribution to the Code’s “fresh start” policy.
Federal Home and amici declare, in addition, that if residential mortgagees, are not able to receive the full amount owing when mortgagors seek Chapter 13 relief, available home mortgage funds will shrink, and rather than promoting the goal of home ownership, this will, make financing such purchases more difficult. Nothing in the record supports that declaration, and, even if there were some proof of it, the balance to be struck between promoting home ownership and protecting residential mortgage lenders is one for the legislature, not the courts, to make.
Finally, the fact that Federal Home Loan Mortgage Corporation is an instrumentality of the United States with a statutory mission to increase the availability of residential mortgages is not particularly rele *187 vant in resolving the instant ease. See 12 U.S.C. § 1451; In re Hougland, 886 F.2d at 1184-85 (that residential mortgagee whose mission is part of a social program designed to foster home ownership may be hindered in fulfilling its statutory goals is insufficient justification for contrary interpretation of § 1322(b)(2)). We regard neither Federal Home’s genesis nor its role in the secondary mortgage market as warranting an exemption from the Code’s treatment of residential mortgagees generally. Were falling real estate prices to result in a significant enough number of residential mortgages not being paid so as to reduce the funds available for such mortgages, the remedy, if any, would be in Congress’ hands.
CONCLUSION
The judgment appealed from is accordingly affirmed.