**In re Stewart AVRET, Debtor.**

**UNION MORTGAGE COMPANY, INC., Objecting Creditor,**

v.

**Stewart AVRET, Respondent Debtor.**

**Bankruptcy No. 92–10074.**

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

Oct. 6, 1992.

James D. Walker, Jr., Surrett, Walker, Creson, Way & Coleman, Augusta, Ga., for objecting creditor.

Lee Ringler, Augusta, Ga., for respondent debtor.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

Union Mortgage Company, Inc. ("Union Mortgage") objects to confirmation of the debtor's Chapter 13 plan. Based on the evidence presented at hearing, I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On April 19, 1990 Union Mortgage loaned Eight Thousand Six Hundred Thirty–Eight and 83/100 ($8,638.83) Dollars to Stewart Avret, the Chapter 13 debtor. Debtor executed a promissory note in connection with the loan whereby he promised to repay the loan in monthly installments of One Hundred Fifty and 03/100 ($150.03) Dollars, including interest at the rate of 16.98% per annum. To secure the note, debtor executed a security deed dated April 19, 1990 in favor of Union Mortgage which granted Union Mortgage a security interest in real property that serves as debtor's principal residence at Route 2, Box 390, Neely Road, Hephzibah, Georgia. It is undisputed that Union Mortgage's lien against debtor's residence is a second lien, subordinate to a lien held by Commercial Credit Corporation in the amount of Thirty–Six Thousand Eighty–Nine and 85/100 ($36,089.85) Dollars.[1]

Debtor filed his Chapter 13 petition January 10, 1992. Debtor's proposed Chapter 13 plan calls for monthly payments of One Thousand Twenty and No/100 ($1,020.00) Dollars to the trustee for 60 months to pay all secured claims and court costs with unsecured claims to be paid pro rata from the balance of the funds paid to the trustee. The trustee estimates a dividend of 17% will be paid to unsecured creditors. In conjunction with the proposed plan the debtor, by motion, seeks to value Union Mortgage's collateral at One Thousand Five Hundred and No/100 ($1,500.00) Dollars. The plan provides, relevant to the claim of Union Mortgage,

2. ... (b) Secured creditors shall retain liens securing their claims. Creditors who file claims and whose claims are allowed as secured claims shall be paid the lesser of (1) the amount of their claim, or (2) the value of their collateral as set forth here: ... Union Mortgage: $1,500.00 ...

(c) Subsequent to secured creditors, dividends to unsecured creditors who file claims and whose claims are allowed (including the unsecured balances of any partially secured debt) shall be paid ...

2. pro rata, from remaining funds ...

Union Mortgage filed a proof of secured claim for Eight Thousand Nine Hundred Sixty–Seven and 99/100 ($8,967.99) Dollars, to which no objection was filed. Debtor's testimony at confirmation hearing regarding the value of his residence varied, ranging from an estimated fair market value of Thirty–Three Thousand and No/100 ($33,-000.00) Dollars to Forty Thousand and No/100 ($40,000.00) Dollars. No evidence was offered by Union Mortgage on valuation. Based on debtor's testimony, the value of his residence for the purpose of plan confirmation is Forty Thousand and No/100 ($40,000.00) Dollars. The value of Union Mortgage's interest in the bankruptcy estate's interest in the collateral securing Union Mortgage's claim is Three Thousand Nine Hundred Ten and 15/100 ($3,910.15) Dollars.[2]

---

1. Commercial Credit filed a proof of secured claim for Thirty–Six Thousand Eighty–Nine and 85/100 ($36,089.85) Dollars, to which no objection was filed.

2.

$40,000.00
$$-\underline{\$36,089.85}$$ (amount of Commercial Credit
$3,910.15    Corp. first mortgage)

Union Mortgage contends debtor's proposed plan impermissibly modifies its claim under 11 U.S.C. § 1322(b)(2) [3] by valuing its collateral for less than the full amount of its claim, thereby bifurcating its claim, which is secured only by debtor's principal residence, into secured and unsecured portions without full payment of the unsecured claim. Union Mortgage argues that bifurcation pursuant to 11 U.S.C. § 506(a) of its principal residence secured claim with only partial payment of the unsecured portion of the claim invokes the lien avoidance provisions of 11 U.S.C. § 506(d) [4] in a manner prohibited by the United States Supreme Court's recent decision in *Dewsnup v. Timm*, ——, U.S. ——, 112 S.Ct. 773, 116 L.E.2d 903 (1992).

The debtor argues that bifurcation of an undersecured principal residence secured claim pursuant to 11 U.S.C. § 506(a) is not prohibited by 11 U.S.C. § 1322(b)(2), nor does § 1322(b)(2) bar modification of the unsecured portion of such a claim. Debtor further argues that § 506(d) is not involved in bifurcating Union Mortgage's claim because the proposed Chapter 13 plan calls for full payment of the secured portion of the obligation and upon confirmation, pursuant to § 1327(c) all property of the debtor vests in the debtor free and clear of any liens.

## CONCLUSIONS OF LAW

■ Section 506(a) is used to determine a creditor's secured status. *In re Hall*, 752 F.2d 582, 588–89 (11th Cir.1985); 11 U.S.C. § 103(a). Under § 506(a), "a creditor's allowed claim is an unsecured claim to the extent that the value of such creditor's interest in the collateral is less than the amount of the allowed claim." *Lamoureux v. Thomas–Wesby (In re: Thomas–Wesby)*, Ch. 13 case No. 89–10291 slip op. at 7, 1990 WL 455311 (Bankr. S.D.Ga. Dalis, J. March 30, 1990). In *Thomas–Wesby* I determined that § 1322(b)(2) does not prohibit bifurcation pursuant to § 506(a) of an undersecured claim that is secured solely by an interest in real property that is the debtor's principal residence. Thus, "only the secured portion of a creditor's claim is protected from modification by a Chapter 13 plan." *Thomas–Wesby, supra,* at 10. *Accord Hougland v. Lomas & Nettleton Co.* 886 F.2d 1182 (9th Cir.1989); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3rd Cir.1990); *Bellamy v. Federal Home Loan Mortgage Corp.,* 962 F.2d 176 (2nd Cir. 1992).

Union Mortgage challenges the result reached in *Thomas–Wesby* contending the words "secured claim[ ]" in § 1322(b)(2) do not necessarily mean the same thing as they mean in § 506(a). In support, Union Mortgage cites *Dewsnup, supra,* wherein the United States Supreme Court held that the phrase "allowed secured claim" in § 506(d) is not defined according to how those same words are used in § 506(a). *Id.* The Supreme Court, however, did not address the issue of whether § 1322(b)(2)'s prohibition against modification of "secured claims ... secured only by" a debtor's principal residence applies to the unsecured portion of an undersecured claim as

**3.** Section 1322(b) provides in pertinent part:
Subject to subsections (a) and (c) of this section, the [Chapter 13] plan may— ...
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims....

**4.** Section 506 provides in pertinent part:
(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title [11], is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim....
....
(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—
(1) such claim was disallowed under section 502(b)(5) or 502(e) of this title; or
(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

determined by reference to § 506(a)'s definition of "secured claim." Unfortunately the legislative history of § 1322(b)(2) gives way to contrary interpretations of § 1322(b)(2)'s intended application. *Compare Wilson, supra,* at 127–28 with *In re Strober,* 136 B.R. 614, 620–22 (Bankr. E.D.N.Y.1992), *overruled by, Bellamy, supra,* and *In re Ireland,* 137 B.R. 65 (Bankr. M.D.Fla.1992). The Supreme Court's exception in *Dewsnup* to the general rule of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning," *Atlantic Cleaners & Dyers, Inc. v. U.S.,* 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.E.2d 1204 (1932), does not persuade me that Congress intended different meanings of "secured claim" in §§ 506(a) and 1322(b)(2). *See Dewsnup, supra,* —— U.S. at —— n. 3, 112 S.Ct. at 778 n. 3. "[W]hile § 506(d), unlike § 506(a), is concerned with liens, § 1322(b)(2)—as does § 506(a)—addresses claims." *Bellamy, supra,* at 183. Absent binding contrary authority, I am unconvinced by Union Mortgage's reading of § 1322(b)(2) to preclude bifurcation of a principal residence secured claim pursuant to § 506(a) and rely on my previous analysis in *Thomas–Wesby* and the cases cited therein, as well as *Bellamy,* in reaffirming that bifurcation of such a claim is authorized by § 506(a).

■ Having resolved the bifurcation issue in favor of the debtor, remaining for resolution is Union Mortgage's contention that even if bifurcation is permitted, following the completion of debtor's plan and discharge, Union Mortgage will retain its lien, an in rem claim, to secure payment to the full extent of the remaining unpaid debt. Union Mortgage relies upon the Supreme Court's analysis in *Dewsnup.* In *Dewsnup,* the Supreme Court held that a Chapter 7 debtor could not use § 506(d) in conjunction with § 506(a) to avoid a secured creditor's lien to the extent that the creditor's allowed claim exceeded the value of the collateral, *id.,* —— U.S. at ——, 112 S.Ct. at 778, relying on "the pre-Code rule that liens pass through bankruptcy unaffected." *Id.* Union Mortgage is correct in its position that the analysis of § 506(d) in

*Dewsnup* that "allowed secured claim" in § 506(d) is not an indivisible term of art defined by § 506(a), but must be read, for § 506(d) purposes, term-by-term to determine that the claim is first allowed, and second secured, applies equally in a Chapter 13 context. Although the Court expressed no opinion as to whether the words "allowed secured claim" have different meaning in other provisions of the Bankruptcy Code, *id.,* —— U.S. at —— n. 3, 112 S.Ct. at 778 n. 3, the Court was clear as to the analysis required for the application of § 506(d). As § 506(d) applies in Chapters 7, 11, 12 and 13, 11 U.S.C. § 103(a), the analysis for invoking this provision must apply equally in each chapter.

In the context of a Chapter 13 case, however, § 506(d) is not necessary to satisfy the lien. Section 506(a) provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a *secured claim* to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an *unsecured claim* to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." (Emphasis added). Once an "allowed claim" is bifurcated pursuant to § 506(a) the creditor is allowed two claims, one secured and one unsecured.

As it pertains to the allowed secured claim secured by an interest in real property that is the debtor's principal residence, pursuant to § 1322(b)(2), such claim holder's rights may not be modified. Therefore, under the facts of this case, the plan must provide for the payment of the allowed secured claim at the contracted payment together with future interest at the contracted rate. A lien is defined as a "charge against or interest in property to secure payment of a debt...." 11 U.S.C. § 101(37). A debt is defined as "liability on a claim." 11 U.S.C. § 101(12). Therefore, once the liability on the allowed secured claim has been paid the liability of the debtor is satisfied to the extent of payment and, the lien, to the extent that it secures the payment of the allowed secured claim, is satisfied.

Regarding the allowed unsecured claim, § 1322(b) provides that "the plan may— ... (2) modify the rights ... of holders of unsecured claims." As the holder of an allowed unsecured claim the rights of Union Mortgage are subject to modification to the extent of any charge against or interest in property which purports to secure payment of the allowed unsecured claim. Therefore, the plan may provide for the satisfaction of the lien upon completion of the plan to the extent that the lien purports to secure payment of the allowed unsecured claim. The provisions of § 506(a) and § 1322(b)(2) permitting the modification of the rights of the holder of an allowed unsecured claim authorize "lien stripping" in a Chapter 13 case, not § 506(d).

Debtor's argument that § 1327(c) effectuates the lien stripping and not § 506(d) is not applicable in this case. Section 1327(c) provides *"[e]xcept as otherwise provided in the plan* or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan." (Emphasis added). The plan submitted by the debtor provides that "[s]ecured creditors shall retain liens securing their claims." Under the plan, upon confirmation the property upon which Union Mortgage holds a lien vests in the debtor subject to the lien of Union Mortgage.

Therefore, any confirmable plan as it pertains to the "allowed secured claim" of Union Mortgage must provide for the maintenance of payments in the amount contractually agreed between the parties, One Hundred Fifty and 03/100 ($150.03) Dollars per month, together with future interest at the rate specified in the agreement, 16.98% per annum. The permitted bifurcation merely shortens the term for pay out. *See, Thomas–Wesby, supra.* As it pertains to the allowed unsecured claim, the plan may modify the rights of Union Mortgage to provide for the satisfaction of the lien upon completion of the plan to the extent that the lien purports to secure payment of the allowed unsecured claim.

It is therefore ORDERED that the objection of Union Mortgage as to valuation proposed by the debtor is sustained. The debtor shall file a modification to the proposed Chapter 13 plan meeting the requirements of this order within fifteen (15) days.